

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/24/2019

| | | |
|---|---|---|
| IN RE: | § | |
| TAMARA TURNER; aka OWENS | § | CASE NO: 14-32173 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION

Pursuant to a default judgment, the Court required Tamara Turner to turn over possession of a 2012 Audi A7 and a 2015 Cadillac Escalade to Kar Market. Ms. Turner failed to do so, and Kar Market moved for contempt. The Court granted the motion and issued an arrest warrant. The U.S. Marshals took Ms. Turner into custody shortly thereafter. Ms. Turner moved for reconsideration of the civil contempt order and the Court released her from custody, pending the disposition of her motion to reconsider.

A good magician never reveals her methods. But most magicians do not abscond with the audiences' valuables after the magic show. Ms. Turner's illusions caused the disappearance of two luxury vehicles, weighing approximately five tons, equipped with remote tracking devices and engine locks, gone without a trace. The Court does not accept Ms. Turner's fantastic story by which she tries to explain the disappearance of the two luxury cars. For the reasons set forth below, Ms. Turner remains in contempt.

## Background

Ms. Turner filed for Chapter 7 bankruptcy on April 22, 2014. (ECF No. 1). Ms. Turner's bankruptcy schedules did not list a 2012 Audi A7 which she purchased from Kar Market, nor was Kar Market listed as a creditor. (*See generally* ECF Nos. 2, 7). Six days after filing, and without leave of the Court, Ms. Turner purchased a 2012 Land Rover Range Rover from Kar Market. (ECF No. 31 at 3). Ms. Turner received a discharge on August 13, 2014. (ECF No.

26). On October 1, 2014, Ms. Turner traded in the Land Rover for a 2015 Cadillac Escalade. (ECF No. 31 at 3). Some months later, Ms. Turner defaulted on both the Audi and the Cadillac. (ECF No. 31 at 4). Kar Market attempted to repossess, but failed as it was unable to locate either vehicle.

Nearly three years later, on April 7, 2017, Kar Market moved to reopen Ms. Turner's case in order to file a complaint to determine dischargeability under 11 U.S.C. § 523. (ECF No. 31 at 2). The Court granted the motion and Kar Market commenced adversary proceeding No. 17-03259 against Ms. Turner. (ECF No. 32, 34). The complaint alleged that: (i) Ms. Turner purchased the vehicles from Kar Market; (ii) failed to disclose the vehicles on her schedules or to notify Kar Market of the bankruptcy filing; (iii) ceased making payments on the vehicles eight months after receiving her discharge; and (iv) took steps to prevent Kar Market from locating and repossessing the vehicles. (Case No. 17-03259, ECF No. 1 at 3-5). Kar Market sought a determination that the debts were excepted from discharge and an order directing Ms. Turner to turnover possession of the vehicles. (Case No. 17-03259, ECF No. 1 at 10).

Ms. Turner did not respond to the complaint and the Court issued a default judgment in favor of Kar Market on November 9, 2017. (Case No. 17-03259, ECF No. 19). The judgment ordered Ms. Turner to turnover the vehicles by November 24, 2017. (Case No. 17-03259, ECF No. 19 at 1). When she failed to do so, Kar Market moved for contempt. (Case No. 17-03259, ECF No. 21). The Court issued an order to show cause and set the matter for hearing on December 11, 2017. (Case No. 17-03259, ECF No. 22). After Ms. Turner failed to respond to the show cause order or appear at the hearing, the Court directed the U.S. Marshal to compel her appearance at a further hearing. (Case No. 17-03259, ECF No. 26).

Ms. Turner appeared before the Court on May 14, 2018, in the custody of the U.S. Marshal.  (Case No. 17-03259, ECF No. 28).  Ms. Turner stated that she and her ex-husband traded-in the Audi and the Cadillac to Supreme Automotive in 2015.  (May 14, 2018 Hearing at 10:39 a.m.).  The Court released Ms. Turner from the Marshal's custody on the condition that she appear in person before the Court at a further civil contempt hearing.  (Case No. 17-03259, ECF No. 28).

The Court held another hearing on September 26, 2018.  This time, Ms. Turner testified that she no longer owned the vehicles because her ex-husband alone traded them in.  (September 26, 2018 Hearing at10:20 a.m.).  The Court found Ms. Turner "has no credibility" and determined that she failed to comply with the Court's orders.  (September 26, 2018 Hearing at 10:58 a.m.).  However, the Court gave the parties until October 23, 2018, to submit title and registration information for the vehicles.  (September 26, 2018 Hearing at 10:59 a.m.).

At a hearing on October 23, 2018, the parties presented records indicating that both vehicles remained in Ms. Turner's name.  (October 23, 2018 Hearing at 11:09 a.m.).  Ms. Turner's counsel also stated that the vehicles were turned over to an individual named Bryan Guyton.  (October 28, 2019 Hearing at 11:10 a.m.).  The Court found this fact inconsistent with Ms. Turner's testimony that her ex-husband traded in the vehicles.  (Case No. 17-03259, ECF No. 36).  The Court indicated that: "Ms. Turner ha[d] the ability to control the disposition of the two vehicles," and that "[b]y failing to exercise that control, she remain[ed] in civil contempt of this Court's orders."  (Case No. 17-03259, ECF No. 36 at 2).  The Court placed Ms. Turner in the custody of the U.S. Marshals until she complied with the turnover order.

Ms. Turner was temporarily released from custody on November 9, 2018, so that she could aid in her counsel's efforts to locate the vehicles.  (Case No. 17-03259, ECF No. 39 at 1).

On December 21, 2018, the Court held another hearing on the matter and extended Ms. Turner's temporary release until February 22, 2019. (December 21, 2018 Hearing at 9:51 a.m.). At the hearing, Ms. Turner's counsel indicated that progress was being made in the search. Counsel stated that a mechanic's lien was filed on the Cadillac Escalade in Jonestown, Texas, and asked for time to investigate the lead. (December 21, 2018 Hearing at 9:34 a.m.) The Court scheduled a final evidentiary hearing for February 22, 2019.

At the final hearing, the Court heard testimony from Ms. Turner, her friend Heather Campos, her former spouse Isaac Owens, his business partner Mashariki Arceneaux, and Kar Market's owner Nitin Narang. (ECF No. 62). Ms. Turner testified that she last possessed the vehicles in April 2015, before she traded them in to Supreme Automotive. (February 22, 2019 Hearing at 9:57 a.m.). Ms. Turner did not provide the date of the trade in with Supreme Automotive, nor did she describe the consideration she received in exchange for the vehicles. She further stated that she did not recall her prior testimony that Mr. Owens disposed of the vehicles. (February 22, 2019 Hearing at 9:59 a.m.). When asked about the steps she took to track down the vehicles, Ms. Turner answered that she reached out to individuals involved with the trade-ins and drove by addresses where the vehicles might be located. (February 22, 2019 Hearing at 10:54 a.m.). Those efforts proved unsuccessful.

Heather Campos, an acquaintance of Ms. Turner since 2009 and a friend since 2014, testified that she had never seen Ms. Turner in either vehicle. (February 22, 2019 Hearing at 10:03 a.m.). Ms. Campos also testified that she sees Ms. Turner about once every three to four months. (February 22, 2019 Hearing at 10:04 a.m.).

Ms. Turner's ex-husband, Isaac Owens, also provided testimony about the vehicles. Mr. Owens stated that he and Ms. Turner were married from June 12, 2008 until October 2016.

(February 22, 2019 Hearing at 10:07 a.m.). Mr. Owens was incarcerated from approximately August 2008 until June 2013, and again in May or June 2016. (February 22, 2019 Hearing at 10:07 a.m.). According to Mr. Owens, he was present when Ms. Turner purchased the Audi, but she bought the Audi for her own personal use. (February 22, 2019 Hearing at 10:14 a.m.). Mr. Owens went on to state that Ms. Turner purchased a Range Rover from Kar Market as a birthday gift to herself in the middle of 2014. (February 22, 2019 Hearing at 10:14 a.m.). The couple separated soon after, but when Mr. Owens visited Ms. Turner in 2015, she drove an Escalade and a BMW sedan. (February 22, 2019 Hearing at 10:15 a.m.). He testified that he last saw Ms. Turner driving the Escalade in May or June 2016, and he has not seen the Audi since 2014. (February 22, 2019 Hearing at 10:09 a.m.). Mr. Owens claimed that he did not know what became of either vehicle, but that he did not dispose of either one. (February 22, 2019 Hearing at 10:11 a.m.).

Mr. Owens also testified that he was convicted of perjury in 2002. (February 22, 2019 Hearing at 10:16 a.m.). The conviction arose after Mr. Owens entered a plea bargain for crimes unrelated to the present proceeding and subsequently testified on behalf of his alleged accomplice and denied the events leading to the conviction. (February 22, 2019 Hearing at 10:18 a.m.). Mr. Owens stated that he did not consult with a lawyer prior to testifying, and that he was not aware that testifying on his friend's behalf constituted perjury. (February 22, 2019 Hearing at 10:19 a.m.).

The Court next heard testimony from Mashariki Arceneaux, Mr. Owens' business partner and friend. Ms. Arceneaux previously testified that Ms. Turner was known to be involved in a "car ring." (December 21. 2018 Hearing at 9:47 a.m.). At the February 22, 2019 hearing, Ms. Arceneaux stated that she has known of Ms. Turner since about 2011. (February 22, 2019

Hearing at 10:24 a.m.). She testified that at the time when Ms. Turner drove the vehicles, Ms. Turner's social media accounts suggested she lived a luxurious lifestyle, but that those same pages now show a more modest lifestyle. (February 22, 2019 Hearing at 10:27 a.m.). Ms. Arceneaux also stated that Ms. Turner was able to acquire vehicles for friends who needed cars. (February 22, 2019 Hearing at 10:29 a.m.). However, Ms. Arceneaux could not explain how Ms. Turner allegedly gained access to those vehicles. (February 22, 2019 Hearing at 10:29 a.m.).

Finally, the Court heard testimony from Kar Market's owner, Nitin Narang. Mr. Narang routinely sold vehicles to Ms. Turner. (February 22, 2019 Hearing at 10:46 a.m.). The vehicles contained tracking systems and engine locks used to disable and locate the vehicles in the event of a default. (February 22, 2019 Hearing at 10:47 a.m.). At some point, those devices were disabled in the Audi and the Cadillac. (February 22, 2019 Hearing at 10:47 a.m.). Mr. Narang stated that it was upsetting that the vehicles were not returned, because Kar Market does not normally seek deficiencies after customers return vehicles. (February 22, 2019 Hearing at 10:48 a.m.).[1]

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

---

[1] At the February 22, 2019 hearing, Mr. Narang stated that Tamaria Thompson originally referred Ms. Turner to Kar Market. (February 22, 2019 Hearing at 10:48 a.m.). Ms. Turner stated that Ms. Thompson was with her when she returned the vehicles to Supreme Automotive. (February 22, 2019 Hearing at 10:54 a.m.). Ms. Turner planned to call Ms. Thompson as a witness at the February 22, 2019 hearing. However, Ms. Thompson was not present in the courtroom. (February 22, 2019 Hearing at 10:55 a.m.). Ms. Turner explained that Ms. Thompson "knows what happened," but did not want to perjure herself, so she stayed in the car outside instead of attending the hearing. (February 22, 2019 Hearing at 10:54 a.m.). The Court draws no inferences from Ms. Thompson's decision not to testify.

**Analysis**

When an individual "violates a definite and specific order of the court" requiring the performance of a particular act, she commits contempt. *Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). The individual must have knowledge of the court's order. *Id.* Once an individual commits contempt, "[t]he court may exercise its contempt power either to secure compliance or to compensate the injured party for the actions of the contemnor." *Jim Walter Res., Inc. v. United Mine Workers of Am.*, 609 F.2d 165, 169 (5th Cir. 1980) (citing *Unites States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)).

Civil contempt is meant to be remedial and to benefit the party injured by the contemnor. *S. Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968). In a civil contempt proceeding, the movant must show the elements of contempt by clear and convincing evidence. *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). The movant must show: "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Faulkner v. Kornman*, No. 10-301, 2012 WL 1903089, at *2 (Bankr. S.D. Tex. May 24, 2012) (citing *Petroleos*, 826 F.2d at 401).

The burden shifts to the contemnor once the movant demonstrates a prima facie violation. *In re Norris*, No. 96-30146, 1997 WL 256808, at *10 (5th Cir. Apr. 11, 1997). The contemnor may show that she is presently unable to comply with the order. *Id.* When compliance is impossible, "neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983). "In order to show an inability to comply with a court order, a party must: (1) explain categorically and in detail why; (2) show the inability was not self-induced; and (3) demonstrate it made in good faith all

reasonable efforts to comply." *In re Galiendo*, No. CIV A. H-05-4384, 2006 WL 2168125, at *2 (S.D. Tex. July 31, 2006) (citing *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 736 (8th Cir. 2001)).

The contemnor bears the burden of showing an inability to comply by a preponderance of the evidence. *See Rylander*, 460 U.S. at 757. For instance, the contemnor may put forth documentary evidence showing she no longer owns or controls the property referenced in the order. *See Owlia v. Am. Dairy Queen, Inc.*, No. CV H-07-1348, 2008 WL 11474855, at *3 (S.D. Tex. Nov. 13, 2008) (finding contempt where defendant failed to submit documentation that he sold his restaurant prior to operating the restaurant in violation of permanent injunction). "If the alleged contemnor makes a sufficient showing, the party seeking contempt has the burden of proving ability to comply." *Norris*, 1997 WL 256808, at *10.

Neither party contests that a prima facie contempt violation occurred in this case. The Court issued an order directing Ms. Turner to surrender possession of the vehicles. (Case No. 17-03259, ECF No. 19 at 1). Despite knowledge of the Court's order, Ms. Turner failed to turn over possession. Absent mitigating circumstances, that failure permits the Court to exercise its civil contempt power in order to secure compliance or compensate Kar Market. *Jim Walter Res.*, 609 F.2d at 169. Ms. Turner believes that mitigating circumstances exist because she no longer knows the whereabouts of the vehicles.

Ms. Turner argues that because she traded in the vehicles, she is presently unable to comply with the Court's order, and that the impossibility of compliance excuses civil contempt. However, Ms. Turner does not, by a preponderance of the evidence, satisfy any of the three factors set forth in *Galiendo*. 2006 WL 2168125, at *2. First, Ms. Turner has not put forward a detailed or credible explanation of what happened to the vehicles. Indeed, there is no credible

evidence that the cars were traded in. Nor has she offered any indication that the vehicles' disappearance was not self-induced. Finally, although Ms. Turner has provided some evidence of efforts undertaken to track down the vehicles, her scant explanations demonstrate that she did not take reasonable efforts in good faith. Civil contempt is warranted because Ms. Turner's violation of the Court's order is not excused by a present inability to comply.

*Explain the Inability Categorically and in Detail*

Ms. Turner has not explained, categorically and in detail, what became of the Audi or the Cadillac. At various points, she claimed that Mr. Owens disposed of the vehicles on his own, that she sold the vehicles to Supreme Automotive, and that she turned over possession of the vehicles to an individual named Brian Guyton. Despite her conflicting explanations, Ms. Turner settled on a belief that she traded the vehicles in to Supreme Automotive. However, Ms. Turner has not provided the Court with any details of those transactions. Ms. Turner did not state whether she traded in both cars at once, or whether she disposed of the vehicles at different times. Nor has she said precisely where the trade ins occurred. No documentation of the trade ins has been submitted and Ms. Turner has not stated what consideration Supreme Automotive paid for the vehicles. Title to the cars remains in her name. It strains credulity to believe that a car dealer—having accepted a trade-in—would have left the title to the cars in Ms. Turner's name. Ms. Turner introduced no evidence that she had made any attempt to obtain documentation reflecting the sale from Supreme Automotive. In short, Ms. Turner's explanation lacks virtually every relevant detail. Ms. Turner has not provided a categorical and detailed explanation of her inability to comply with the turnover order.

*Show the Inability was not Self Induced*

Ms. Turner's alleged inability to comply is self-induced. Ms. Turner obviously knows what became of the vehicles. At no point has she suggested that she lost possession of the vehicles involuntarily. Even assuming she traded the vehicles in to Supreme Automotive, Ms. Turner has not explained why she or Supreme Automotive cannot provide documentation of the trade ins. Further, the vehicles are still registered and titled in her name. The record does not point to any party being responsible for the disappearance of these vehicles besides Ms. Turner. Her testimony does not suggest an inability to comply; it shows an unwillingness to do so. As such, she fails to satisfy the second prong of the *Galiendo* test.

*Make All Reasonable Efforts to Comply*

Nothing in the record indicates that Ms. Turner has exhausted all reasonable means of compliance and done so in good faith. Ms. Turner testified that she drove by a number of addresses attempting to locate the vehicles. (February 22, 2019 Hearing at 10:54 a.m). Further, she claims to have reached out to individuals involved with the trade ins. (February 22, 2019 Hearing at 10:54 a.m). These steps are insufficient. Ms. Turner has barely tried to explain how these individuals were involved or what events happened at the addresses she investigated. Nearly two years have passed since the Court ordered Ms. Turner to turn over the vehicles by November 24, 2017. (*See* Case No. 17-03259, ECF No. 19 at 1). The steps Ms. Turner took in that time do not show a good faith attempt to locate Kar Market's collateral. As stated above, Ms. Turner's threadbare recollection of events shows an unwillingness to cooperate. Her actions are more consistent with an attempt to conceal the vehicles than an attempt to locate them. For that reason, Ms. Turner has not undertaken all reasonable good faith steps to comply with the Court's order, and she does not meet the final prong of *Galiendo*.

**Conclusion**

Kar Market proved that Ms. Turner violated a lawful court order, and Ms. Turner did not meet her burden of showing a present inability to comply. As such, the Court finds Ms. Turner in civil contempt. The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **October 24, 2019.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE